## STATE OF CONNECTICUT *v.* ANTHONY RIVERA
### (AC 23227)

Lavery, C. J., and West and Mihalakos, Js.

Argued December 4, 2003—officially released August 3, 2004

*Damon A. R. Kirschbaum*, special public defender, with whom, on the brief, was *Felix Esposito*, special public defender, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, was *David Shepack*, state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Anthony Rivera, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and risk of injury to a child in violation of General Statutes (Rev. to 1997)

§ 53-21 (2). On appeal, the defendant claims that (1) his conviction for both offenses violated the constitutional prohibition against double jeopardy, (2) the court improperly instructed the jury with regard to an essential element of risk of injury to a child and with regard to the duty of the jurors not to discuss the case during the trial, (3) the court improperly failed to inquire into potential juror misconduct and (4) the state engaged in a pattern of prosecutorial misconduct prejudicial to his case. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On approximately the fifteenth, sixteenth or seventeenth of July, 1997, the twenty-seven year old defendant engaged in vaginal sexual intercourse with the fifteen year old victim[1] while the victim's younger sister and the defendant's roommate, Leonard St. Denis, were both in the room. The defendant bragged to several people that he had sexual intercourse with the victim. Eventually, the information was brought to the attention of the defendant's girlfriend. The defendant's girlfriend informed the victim's mother that the defendant had sexual intercourse with her daughter, and a friend of the victim's mother contacted the police on July 20, 1997. When the defendant learned that the police were involved, he left the state.

The defendant eventually was arrested, and his case was tried to a jury. He was found guilty as charged and received a total effective sentence of twenty years incarceration, execution suspended after twelve years, and twenty years probation. This appeal ensued.

I

The defendant first claims that his conviction violated the constitutional prohibition against double jeopardy

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

because sexual assault in the second degree is a lesser offense included within the crime of risk of injury to a child. We disagree.

The issue of whether the defendant's constitutional rights to be free of double jeopardy were violated is a question of law and, accordingly, our review is de novo. *State* v. *Ellison*, 79 Conn. App. 591, 598, 830 A.2d 812, cert. denied, 267 Conn. 901, 838 A.2d 211 (2003). Although the defendant did not preserve his claim at trial, we will review it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2]

When faced with a double jeopardy claim, we administer the *Blockburger* test to determine whether the defendant's constitutional rights were violated. *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. Because the two charges against the defendant resulted from the same act, we will administer the *Blockburger* test.

The defendant's argument is based on the precise language used in the substitute information that set forth the charges against him. The state charged the defendant with risk of injury to a child for allegedly "hav[ing] contact with the genital area, to wit: *vaginal*

---

[2] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

*sexual intercourse* with a child under the age of sixteen . . . ." (Emphasis added.) The defendant argues that, as charged, he could not be found guilty of risk of injury to a child without also being found guilty of sexual assault in the second degree and, therefore, one charge is a lesser offense included within the other. After examining the elements of the charged offenses, it is clear that each requires proof of a fact that the other does not. Section 53a-71 (a) (1) sets forth the elements of sexual assault in the second degree as follows: (1) a person *engages in sexual intercourse* (2) with another person who is thirteen years of age or older but under sixteen years of age, and (3) the actor is more than two years older than such person.[3] (Emphasis added.) Section 53-21 (2) sets forth the elements of risk of injury to a child as follows: (1) any person has contact with the intimate parts of, as defined in General Statutes § 53a-65, or subjects to contact with that person's intimate parts (2) a child under the age of sixteen years (3) *in a sexual and indecent manner likely to impair the health or morals of such child.*[4] Although those two offenses both involve sexual contact with a child younger than sixteen years of age, one is not a lesser offense included within the other. Risk of injury to a child requires proof that the contact was made in a sexual and indecent manner likely to impair the health or morals of the child, while sexual assault in the second degree does not. Sexual assault in the second degree

[3] The precise language of General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[4] The precise language of General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . ."

requires proof of sexual intercourse, while risk of injury to a child does not. Accordingly, sexual assault in the second degree is not a lesser offense included within the crime of risk of injury to a child. Although the state specified in its substitute information that the contact with the intimate parts *in this case* was sexual intercourse, sexual intercourse did not then become a statutory element of risk of injury to a child.[5] The defendant's claim therefore fails under the third prong of *Golding* because the alleged constitutional violation did not clearly exist and did not clearly deprive him of a fair trial.

## II

The defendant next claims that the court improperly instructed the jury with regard to (1) an essential element of risk of injury to a child and (2) the duty of the jury not to discuss the case during the trial. We disagree with both claims.

"The standard of review for constitutional claims of improper jury instructions is well settled. In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so

---

[5] In addition, the defendant argues that the age requirements of both statutes are not "elements" but rather are "statutory exemptions." Because we are able to conclude that each statute requires proof of an additional element that the other does not without relying on either of the statutes' age requirements, we do not address that argument.

that no injustice will result." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 128, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). Although the defendant did not preserve his claim at trial, we will review it pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.

A

The defendant claims that the court improperly instructed the jury on an essential element of risk of injury to a child. Specifically, the defendant challenges the following portion of the charge to the jury: "[S]exual intercourse is the type of activity that Connecticut General Statutes § 53-21 (2) seeks to protect children from. And this is the type of activity which is likely, if it did take place, to impair the morals of a child." The defendant argues that the charge, as given, lessened the state's burden of proof on an essential element of the charged offense and essentially directed a verdict against the defendant. We disagree.

Our Supreme Court previously addressed the propriety of the precise language at issue in this case and concluded: "It was well within that function for the court to instruct the jury, after reviewing the evidence of the defendant's conduct, that '[t]his is the type of activity that Connecticut General Statutes [§] 53-21 seeks to protect children from. And, that is the type of activity which is likely, if it did take place, to impair the health and morals of a child.' We see nothing in this charge which even approaches the kind of impropriety claimed by the defendant. The instructions, read in their entirety, did not direct or advise the jury how to decide the matter, and fairly presented the case to the jury in such a way that no injustice was done to the defendant. Indeed, the instructions comported with the requirement that an allusion to the evidence is necessary to furnish the jury with a practical guide as to how to

apply the law to the evidence." *State* v. *Storlazzi*, 191 Conn. 453, 467, 464 A.2d 829 (1983).[6]

When looking at the charge in its entirety, we conclude that the court properly instructed the jury. Immediately following the portion of the charge that the defendant challenges, the court stated: "It is, nevertheless, for you to decide if the defendant's conduct, alleged here to be sexual intercourse, would likely impair the health or morals of a child. The decision as to whether the particular conduct is likely to impair the health or morals of a minor involves an inference or conclusion you should draw, not from the evidence of the defendant's conduct, but from your own individual experience as men and women living in contemporary society. In reaching your conclusion, you should draw on your own knowledge, common sense and experience as to the kind of conduct that is likely to impair the health and morals of a young person under the age of sixteen years old." Viewing the charge in its entirety, it is clear that the court did not lessen the state's burden of proof or direct a verdict against the defendant. Consequently, we conclude that the court adequately charged the jury on the essential elements of risk of injury to a child. The defendant has failed to satisfy the third prong of *Golding*.

B

The defendant next claims that the court improperly instructed the jurors with regard to their duty not to discuss the case during the trial. Specifically, the defendant argues that the court improperly instructed the jurors that they could tell others that they were serving

---

[6] The defendant argues that his case is distinguishable from *Storlazzi* because an examination of the defendant's brief in *Storlazzi* indicates that the defendant in that case based his argument on grounds different from that of the defendant in this case. It is the holding of the Supreme Court, however, rather than the manner in which the arguments are briefed, that is relevant to this court when relying on precedent.

as jurors or alternate jurors "in a criminal case . . . ." Such a statement, the defendant argues, was improper because it was likely to invite unsolicited comments regarding other people's strong, often negative opinions of those accused of committing a crime. We disagree.

With regard to proper juror conduct, the court instructed the jury as follows: "Do not discuss or make any remark about the case or anything about it to anyone until I tell you it's time to do so. And that includes your other jurors, the people you go home to, the people you see and converse with on days that the case is not in progress, the lawyers and all court staff. You may tell them that you are a juror and in a criminal case, but not tell them anything else about it until you have been discharged by me. Do not allow anyone to make any comment to you about the case or any issue involved in the case. If someone should try to talk to you, please report that to me immediately." The court reminded the jurors of that duty each day before they left the courtroom.

Although the defendant claims that those instructions invited negative comments regarding criminal defendants, we disagree after viewing the charge in its entirety. The court clearly stated that unsolicited comments to members of the jury were prohibited and were to be reported to the court immediately. The court's instructions regarding juror conduct were not improper. The defendant's claim fails to satisfy the third prong of *Golding*.

### III

The defendant next claims that the court improperly failed to inquire into alleged juror misconduct. The defendant argues that during an evidentiary hearing regarding a different alleged incident of juror misconduct, the court improperly failed to inquire into a second

alleged incident of misconduct, which was raised by the defendant for the first time at that hearing. We disagree.

The following additional facts are necessary for our resolution of that issue. After the defendant was convicted, the court learned that the jury foreperson had seen a newspaper headline during the defendant's trial involving the defendant and other pending criminal charges against him. The court informed both the state and the defendant of the possible juror misconduct. The defendant filed a motion for a new trial and the court held an evidentiary hearing on the motion. At the hearing, the defendant attempted to question the juror about a completely different incident of potential misconduct.[7] The defendant previously had not raised that second issue, and the court did not allow him to exceed the scope of the hearing to explore that line of questioning. The defendant never raised his new claim at any later time but now claims on appeal that it was improper for the court not to conduct a preliminary inquiry.

Our role is limited, on appeal, to a consideration of whether the trial court's review of alleged jury misconduct can be characterized fairly as an abuse of its discretion. *State* v. *Jackson*, 73 Conn. App. 338, 356, 808 A.2d 388, cert. denied, 262 Conn. 929, 814 A.2d 381 (2002). It is well established that "a trial court must conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case, regardless of whether an inquiry is requested by counsel. Although the form and scope of such an inquiry lie within a trial court's discretion, the court must conduct some type of inquiry in response

---

[7] The defendant argues that he saw the same juror, during the course of his trial, when the defendant was shackled and getting out of a department of correction truck. The defendant never raised the issue at the time of the alleged sighting. The defendant also did not allege that the juror saw *him*, but rather only that *he* saw the *juror*.

to allegations of jury misconduct. That form and scope may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full evidentiary hearing at the other end of the spectrum, and, of course, all points in between. Whether a preliminary inquiry of counsel, or some other limited form of proceeding, will lead to further, more extensive, proceedings will depend on what is disclosed during the initial limited proceedings and on the exercise of the trial court's sound discretion with respect thereto." *State* v. *Brown*, 235 Conn. 502, 526, 668 A.2d 1288 (1995) (en banc).

The court did not violate the mandates of *Brown*. Although the court prohibited the defendant from questioning a juror about possible misconduct during a hearing on another matter, it informed him that he could raise his new claim in a more appropriate manner. See *State* v. *Jackson*, supra, 73 Conn. App. 356–58 (proper *Brown* inquiry when court gave defendant opportunity to submit affidavit before proceeding to question witnesses). The court stated: "[We're] here on [another] motion. *If you have some other claim, then you need to make it in a different manner than this* unless you have some basis for somehow tying this back here to your motion for a new trial. *If you have some other information, then you have to figure out how to raise that.*" (Emphasis added.)

"While *Brown* requires a trial court to conduct a preliminary inquiry whenever an allegation of juror misconduct is raised, the scope and form of that inquiry lies within the court's sound discretion. . . . Requiring a defendant to articulate his claims in a manner so that a court can understand what is before it does not violate the dictates of *Brown*. The court gave the [defendant] the opportunity to develop [his] claim of juror misconduct and [he] failed to do so." *State* v. *Jackson*, supra, 73 Conn. App. 357–58. Accordingly, the court did not

improperly fail to inquire into the alleged claim of juror misconduct.

## IV

The defendant last claims that the prosecutor engaged in a pattern of misconduct that deprived the defendant of a fair trial. Specifically, the defendant argues that the prosecutor engaged in misconduct by (1) stating during closing argument that in order to acquit the defendant, the jury must believe that the state's witnesses were lying, (2) appealing to the passions of the jurors through the examination of the victim, (3) misstating a piece of critical evidence in the case and (4) expressing a personal opinion as to the quality of the defendant's case and, indirectly, his guilt. We are not persuaded.

Before addressing the defendant's claims of prosecutorial misconduct, which were not preserved at trial, we note that our Supreme Court, in *State* v. *Stevenson*, 269 Conn. 563, 849 A.2d 626 (2004), recently enunciated a new analytic approach to reviewing such unpreserved claims. *Stevenson* held, inter alia, that review under *State* v. *Golding*, supra, 213 Conn. 239–40,[8] no longer is needed with respect to unpreserved claims of prosecutorial misconduct because, assuming the record is adequate for review, such claims are, by their very nature, of constitutional magnitude. *State* v. *Stevenson*, supra, 574 n.11. In addition, it held that a reviewing court must apply the test set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), which, in requiring an examination of the entire trial to determine whether the defendant was deprived of a fair trial, encompasses the third and fourth prongs of *Golding*. *State* v. *Stevenson*, supra, 573–74.[9]

[8] See footnote 1.

[9] In holding that *Williams* must be applied to claims of prosecutorial misconduct, whether preserved or unpreserved, our Supreme Court noted that the absence of an objection to misconduct will be considered in determining "whether and to what extent the misconduct contributed to

"To prove prosecutorial misconduct, the defendant must demonstrate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Ceballos*, 266 Conn. 364, 376, 832 A.2d 14 (2003).

Accordingly, claims of prosecutorial misconduct trigger a two step analytical process. "The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 572. Once the first step is complete and misconduct has been identified, we must apply the factors set forth in *State* v. *Williams*, supra, 204 Conn. 540, to determine whether the "prosecutorial misconduct was so serious as to amount to a denial of due process . . . . Among [those factors] are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 573.

Applying those principles, we conclude that only two of the comments challenged by the defendant were

depriving the defendant of a fair trial and whether, therefore, reversal is warranted." *State* v. *Stevenson*, supra, 269 Conn. 576.

improper. With regard to the two improper comments, we are persuaded that there is no reasonable probability that they deprived the defendant of a fair trial.

## A

## Misconduct

### 1

### Statement that if Defendant is Telling Truth, Witnesses Must Be Lying

The defendant first argues that the state improperly told the jury that in order to believe the defendant's version of the events, all the state's material witnesses would have to be lying. We agree with the defendant that this statement was improper.

"[C]ourts have long admonished prosecutors to avoid statements to the effect that if the defendant is innocent, the jury must conclude that witnesses have lied. . . . The reason for this restriction is that [t]his form of argument . . . involves a distortion of the government's burden of proof. . . . Moreover, like the problem inherent in asking a defendant to comment on the veracity of another witness, such arguments preclude the possibility that the witness' testimony conflicts with that of the defendant for a reason other than deceit." (Citations omitted; internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 470–71, 832 A.2d 626 (2003). Accordingly, this statement by the prosecutor was improper.

### 2

### Appeal to the Jurors' Passions

The defendant next argues that the prosecutor improperly appealed to the passions of the jurors through the examination of the victim at trial. Specifically, the defendant argues that questions posed by the

prosecutor asking the victim whether she was upset that she was involved in the court process, whether she would prefer not to be there, whether she had wanted to be interviewed by investigating officers, whether she was upset about what happened, and whether she was proud of what happened were completely irrelevant and were intended only to garner sympathy.

"A prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Internal quotation marks omitted.) *State* v. *Spencer*, 81 Conn. App. 320, 330–31, 840 A.2d 7, cert. granted on other grounds, 269 Conn. 907, 852 A.2d 738 (2004). We conclude that the questions asked of the victim by the prosecutor, signifying that it was the victim's preference not to be involved in the prosecution of the defendant, did not invite the jury to decide the case on the basis of powerful or irrelevant factors. The questions asked of the victim were pertinent to the jury's assessment of her credibility, which was relevant to the state's case. That line of questioning by the prosecutor was proper.[10]

### 3

### Reference to Facts Not in Evidence

The defendant next claims that the prosecutor improperly misstated a critical piece of evidence during closing argument. The state concedes that the prosecutor did refer to a fact that was not in evidence.

---

[10] Although the defendant claims that those questions were improper, we find it noteworthy that the defendant asked the victim similar questions on cross-examination. The defendant asked the victim, "I realize that this is not a place that you want to be; that is correct? Right?" and, "You didn't want the police involved in this, right?"

Both the victim and St. Denis testified at trial that they saw a condom wrapper at the scene of the sexual encounter. During closing argument, the prosecutor made the following statement: "Remember further that both the [victim] and Mr. St. Denis made reference to observing a condom wrapper and, in fact, my recollection, and of course your recollection controls, my recollection is that Mr. St. Denis even testified to seeing a used condom, I believe, in the waste can."

"While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or even to suggest an inference from, facts not in evidence, or to present matters which the jury [has] no right to consider." (Internal quotation marks omitted.) *State* v. *Sells*, 82 Conn. App. 332, 340, 844 A.2d 235, cert. denied, 270 Conn. 911, 853 A.2d 529 (2004). The state concedes that St. Denis did not testify about having seen a used condom. Accordingly, we agree with the defendant that this statement was improper.

4

Expression of Personal Opinion of Guilt
of the Defendant

Finally, the defendant argues that the prosecutor improperly belittled defense counsel and expressed his personal opinion as to the guilt of the defendant. Specifically, the defendant challenges the following statement, made by the prosecutor, directly following the defendant's closing argument: "Thank you, Your Honor. Any country music fans are familiar with Shania Twain's song out there, I submit maybe what's going through your head, that song, 'That don't impress me much.' "

"It is well settled that in addressing the jury, [c]ounsel must be allowed a generous latitude in argument . . . . The parameters of the term zealous advocacy are also

well settled. The prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position." (Internal quotation marks omitted.) *State* v. *Williams*, 81 Conn. App. 1, 8, 838 A.2d 214, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

Viewing those comments in context, we conclude that they were not an improper expression of the prosecutor's personal opinion. The challenged comment immediately followed the defendant's closing argument. Moreover, immediately following the challenged comment, the prosecutor stated: "Let's talk about deflecting responsibility—and I ain't going to take up much more of your time, it's a long morning. Let's talk about deflecting responsibility. [Defense counsel] talks about the periphery of this case. He never addresses the central issue, never addresses it." The prosecutor's comment was not an improper expression of his personal opinion as to either the credibility of the witnesses or the guilt of the defendant. Rather, the prosecutor's comment concerned only the quality of the closing argument, which, in his opinion, failed to address the central issue of the case. We conclude that the comment was proper.

B

Due Process Analysis

We now analyze the two instances of misconduct by the prosecutor to determine whether they violated the defendant's due process right to a fair trial. Mindful of the six *Williams* factors previously set forth, we conclude that the defendant was not deprived of a fair

trial. The defendant did not invite the prosecutor's improper comments. Those improper comments, however, were neither severe nor frequent. The presence or absence of a condom was not a central issue in the case, although the credibility of the witnesses was central to the case. There were no specific curative measures adopted, which is not surprising considering that the defendant did not object to either of the improper comments. See *State* v. *Thompson*, supra, 266 Conn. 483. Finally, and most importantly, the state's case was overwhelmingly strong. Even though the case was, technically, a "credibility contest," this was not a typical sexual assault case in which the only evidence was the testimony of the two parties involved. In this case, the victim admitted on the witness stand to having had consensual sexual intercourse with the defendant;[11] the defendant's roommate, St. Denis, testified that he witnessed the pants of the victim and the defendant get kicked out from under the blanket and witnessed the defendant on top of the victim, under the blankets, making movements consistent with sexual intercourse; St. Denis also testified that the defendant told him he was leaving the state because of "what happened with that girl;" the defendant's former girlfriend, Gina Morelli, testified that the defendant admitted having had sexual intercourse with the victim; the victim's sister testified that she witnessed the defendant in his underwear and the victim wearing no pants, and that afterward the victim told her that she had had sexual intercourse with the defendant; Matthew Morelli, Gina Morelli's brother, testified that the defendant told him that he had had sexual intercourse with the victim and that he had heard the defendant "bragging" about it; and Daniel MacDonald, St. Denis' other roommate, testified

---

[11] Although the victim testified that she was scared and that she didn't want to have sex with the defendant, she did admit that she had sex with the defendant voluntarily. Despite her regrets, force was not an issue at trial.

that the defendant told him that he had had sexual intercourse with the victim. Viewing the prosecutor's misconduct in terms of the trial as a whole, we conclude that the defendant was not deprived of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.