STATE OF CONNECTICUT *v.* LUIS F.*
(AC 23866)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued March 24—officially released September 28, 2004

* In accordance with General Statutes § 54-86e, as amended by Public Acts 2003, No. 03-202, § 15, and this court's policy of protecting the privacy interests of victims in sexual abuse matters, we decline to identify the victim by name, or others through whom the victim's identity may be ascertained.

*Vicki H. Hutchinson,* special public defender, with whom was *Brian Cotter,* for the appellant (defendant).

*Lisa A. Riggione,* senior assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *David R. Shannon,* assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (4), risk of injury to a child in violation of General Statutes § 53-21 (a) (2) and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal the defendant claims that the trial court improperly (1) admitted a videotape of the victim as a prior inconsistent statement and (2) restricted his right to cross-examine the victim. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 28, 2001, the victim, who was fourteen years old, and a friend went to the principal's office of their school. The victim was very upset. During a twenty minute conversation, the victim reported that the defendant, who was her biological father, had sexually abused her. The principal contacted the department of social services.

Thereafter, the department of children and families (department) filed a request for an order of temporary custody allowing the victim to be removed from her home, which the court granted. On October 1, 2001, the victim was interviewed by a multidisciplinary investigative team. See General Statutes § 17a-106a. During the interview, which was videotaped, the victim stated that both her grandfather and the defendant had sexually assaulted her. She stated that the defendant inserted his penis into her vagina on two occasions at their Danbury residence. The victim also described inappropriate touching of her breasts and vagina on other occasions. When the victim's mother entered the victim's bedroom during those incidents, the defendant would abruptly stop touching the victim. The victim eventually informed her mother of the defendant's abuse. Although the victim's mother quarreled with the defendant over his behavior, she did not report it to the police. She also did not bring the victim to see a physician nor did she remove her from their home. The victim stated that there was a break in the abuse after her mother confronted the defendant, however, subsequently, an episode occurred where the defendant hid in the bathroom while she showered. The victim reported this episode to her mother. The victim also described a pattern of sexual abuse by the defendant, wherein he would purchase gifts for the victim and, in return, he would require her to have sexual relations with him.

The police interviewed the victim's mother shortly after the victim was interviewed by the multidisciplinary team. She did not appear to be surprised by the victim's allegations. At trial, however, the mother contradicted and recanted many of the statements she made during her interview with the police concerning the defendant's sexual abuse of the victim.

During an interview with the police, the defendant admitted that he had touched the victim's breasts and

vagina, but denied that he had sexual intercourse with her. The defendant stated that it was "okay to touch [his] daughter" and that it "is not as bad as sexual intercourse." The defendant admitted that when the victim's mother confronted him, he told her that he would not touch the victim again. He also admitted that subsequent to making that promise, he had hidden in the victim's bedroom and watched her as she undressed.

The victim testified at trial that she had "made everything up." She testified that she was aware that her mother was saddened that the defendant could not live with them, and that she did not want her father to go to jail. Although she acknowledged that the defendant had touched her breasts and vagina when he disciplined her, she stated that he did so because he was angry, having witnessed her "boyfriends touching [her] in [her] privates." She explained that the defendant had touched her in a nonsexual manner that was not inappropriate and that the defendant had asked her how she could permit her boyfriends to "touch [her] down there." She further testified that she had fabricated the story of the defendant's sexual abuse to get out of the house and that she did not recall stating during her interview with the multidisciplinary team that the defendant had sexual intercourse with her.

I

The defendant first claims that the court improperly admitted the videotape of the victim's interview with the multidisciplinary team as a prior inconsistent statement. Specifically, he argues that the videotape should not have been admitted as a prior inconsistent statement for substantive purposes under *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. The state offered

the videotape of the interview as a prior inconsistent statement for substantive purposes in response to the victim's testimony on direct examination. On direct examination, the victim stated: "Everything I said [on the videotape] was a lie, because I made everything up because I wanted to get out of my house." The jury was excused and the state offered the videotape into evidence. Thereafter, the videotape was played in the victim's presence. The victim identified her voice on the tape, reiterated that everything she had said about the defendant touching her in an inappropriate manner was false, but acknowledged that the defendant had hidden in the bathroom while she showered. The defendant objected to the introduction of the videotape, arguing that the state could question the victim about her statements made during the interview without admitting it. The court admitted the videotape pursuant to *Whelan*.

"As a threshold matter, we set forth the standard by which we review the trial court's determinations concerning the [admissibility] of evidence. The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Hayes* v. *Decker*, 263 Conn. 677, 683, 822 A.2d 228 (2003).

Out-of-court statements offered for the truth of the matter asserted are considered hearsay and are generally not admissible. Conn. Code Evid. §§ 8-1, 8-2. Our Supreme Court has held, however, that an out-of-court statement may be used for substantive purposes, that is, for the truth of the matter that it asserts, if it is "given

under prescribed circumstances reasonably assuring reliability," and it is inconsistent with the declarant's testimony at trial. *State* v. *Whelan,* supra, 200 Conn. 752. The *Whelan* rule is generally accepted as "allowing the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination." Id., 753. The *Whelan* court recognized that "prior tape recorded statements possess similar indicia of reliability and trustworthiness to allow their substantive admissibility as well." Id., 754 n.9; see also *State* v. *Alvarez,* 216 Conn. 301, 313, 579 A.2d 515 (1990) ("[a] prior tape recorded statement . . . is also admissible for substantive purposes"). An important focus of the rule is the reliability of the statement, that is, whether the tape recording is "an accurate rendition of the statement and that the declarant realized it would be relied upon." *State* v. *Whelan,* supra, 200 Conn. 754. Notably, although § 8-5 (1) of the Connecticut Code of Evidence lists only written statements, the commentary expressly recognizes that although the "post-*Whelan* developments were not expressly incorporated into the language of Section 8-5 (1) . . . [the] post-*Whelan* developments nevertheless are considered to be an integral part of this rule." The commentary also cites *State* v. *Woodson,* 227 Conn. 1, 21, 629 A.2d 386 (1993), which dispenses with the declarant's signature as a requirement when the statement is tape recorded.

In the present case, the videotape was properly admitted and provided that the victim had personal knowledge of the events, that she was subject to cross-examination and that the videotape was inconsistent with the victim's testimony at trial. The defendant cannot dispute that the first two requirements are met. The dispositive issue then is whether the victim's statements

on the videotape were inconsistent with her testimony at trial.

"In determining whether an inconsistency exists, the testimony of a witness as a whole, or the whole impression or effect of what has been said, must be examined. . . . Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior statement . . . and the same principle governs the case of the forgetful witness. . . . A statement's inconsistency may be determined from the circumstances and is not limited to cases in which diametrically opposed assertions have been made. Thus, inconsistencies may be found in changes in position and they may also be found in denial of recollection. . . . The trial court has considerable discretion to determine whether evasive answers are inconsistent with prior statements." (Internal quotation marks omitted.) *State* v. *Jackson*, 73 Conn. App. 338, 364, 808 A.2d 388, cert. denied, 262 Conn. 929, 814 A.2d 381 (2002).

Although *Whelan* is not limited to diametrically opposed assertions, such is the case here. The victim testified that all her previous statements about the defendant's sexual abuse of her were lies. She testified that she fabricated the story to get out of the house and that she did not recall stating in her interview that the defendant had sexual intercourse with her.

The victim's testimony on direct examination that her prior statements were not true is inconsistent with those prior statements. Further, the victim's testimony that she did not recall stating that the defendant had sexual intercourse with her can be considered inconsistent with her prior statement that the defendant had sexual intercourse with her, as she presented herself as a forgetful witness. The court was well within its discretion to consider the victim's testimony both inconsistent with her prior statements and evasive.

Accordingly, we conclude that the court properly admitted the videotape as a prior inconsistent statement for substantive purposes.

## II

The defendant claims that the trial court improperly restricted his right to cross-examine the victim. Specifically, he argues that his right to cross-examine the victim was unduly restricted because the court did not allow him to question the victim regarding the results of a medical examination performed on her. We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. The state made a motion in limine to exclude any evidence relating to any physical examinations of the victim. The defendant objected to the motion and argued that he had the right "to ask [the victim's mother] or the victim herself or anyone else to testify whether there's any physical evidence . . . regarding the issue." The state argued that any evidence relating to a physical examination of the victim would be either beyond the anticipated scope of direct examination, hearsay or improper opinion testimony. The court reserved judgment on the state's motion until the issue arose at trial.

During cross-examination of the victim, the defendant asked whether the department or anyone else had sent the victim for a physical examination. The state objected, and the court sustained the objection. After a bench conference, the defendant was allowed to ask the victim whether the department or anyone ever sent her for a physical examination. The victim answered, "Yes." Immediately thereafter, the court ended the defendant's inquiry into the physical examination of the victim.[1]

---

[1] The court stated: "Okay. That's it." Because we interpret this to be a disposition of the earlier motion in limine, to which the defendant objected, we view the defendant's claim as preserved. We also note that the state does not raise a preservation argument and it addresses the claim on its merits.

"We traditionally apply a two part analysis to determine whether a party has been deprived of effective cross-examination. First, we determine whether the defendant received the minimum opportunity for cross-examination of adverse witnesses required by the constitution. . . . If so, we then consider whether the trial court's restriction of cross-examination amounted to an abuse of discretion under the rules of evidence." (Internal quotation marks omitted.) *State* v. *Henry*, 72 Conn. App. 640, 666, 805 A.2d 823, cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002). "[T]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . This right, however, is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. . . . The trial court, in its discretion, may impose limitations on the scope of cross-examination, as long as the defendant has been permitted sufficient cross-examination to satisfy constitutional requirements. . . . The confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination." (Internal quotation marks omitted.) Id., 665.

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . .

"The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating

to the reliability of the witness. . . . To establish that the court abused its discretion, the defendant bears the burden of demonstrating that the restrictions that the court imposed on the cross-examination were clearly prejudicial. . . . Once we conclude that the court's ruling on the scope of cross-examination is not constitutionally defective, we will apply every reasonable presumption in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 65 Conn. App. 449, 458–59, 783 A.2d 53, cert. denied, 258 Conn. 927, 783 A.2d 1032 (2001).

Here, the defendant argues that "[w]hether or not [the victim] was examined by a physician and the results of the examination were important to the issue of sexual intercourse." He argues that the testimony about the physical examination would have helped the jury determine what to believe. The state argues that the court properly prevented the defendant from eliciting testimony from the lay witness victim regarding the results of her medical examination because questions of that nature called for an expert opinion not within the common sphere of knowledge of a lay witness, and such inquiry called for an inadmissible hearsay response from the victim. We agree with the state's argument.

The defendant's constitutional rights were not violated by the court's restriction. The court merely restricted the defendant's inquiry into one area, and the defendant was able to adduce damaging admissions from the victim during the cross-examination that directly bore on the victim's credibility.

We now turn to the question of whether the court abused its discretion. The victim could have known the results of the medical examination only through a discussion with her physician. The victim's testimony

regarding those results, therefore, would be based on hearsay because the physician's statements regarding the results were out-of-court statements that would be offered for their truth. See Conn. Code Evid. § 8-1. The defendant offers no exception to the hearsay rule for the physician's discussion with the victim.[2] See Conn. Code Evid. § 8-2. Further, "the existence or absence of physical injury to a victim's genital or anal area and its relation to a sexual assault is not necessarily an obvious matter within the common knowledge of the average person." *State* v. *Whitley*, 53 Conn. App. 414, 422, 730 A.2d 1212 (1999). The testimony that the defendant sought to elicit, therefore, would also have been barred by § 7-1 of the Connecticut Code of Evidence, which prohibits nonexperts from giving opinion testimony when the opinion is not "rationally based on the perception of the witness and is [not] helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." The victim could not have logically had an opinion, based on her personal perception, regarding the results of the medical examination performed on her.

Accordingly, we conclude that the court's restriction on the defendant's cross-examination of the victim was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] The record does not reveal whether the victim acquired information regarding the results of the examination from her mother. If she learned of the results from her mother, the defendant would face an additional bar because the victim's testimony would be based on hearsay within hearsay, both layers of which would have to be subject to an exception to be admissible evidence. See Conn. Code Evid. § 8-7.