# STATE OF CONNECTICUT *v.* HOWARD F.*
## (AC 24281)

Foti, Dranginis and Flynn, Js.

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom her identity may be ascertained. See General Statutes § 54-86e.

Argued October 22—officially released December 28, 2004

*David V. DeRosa*, special public defender, for the appellant (defendant).

*Christine Collyer*, special deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cara F. Eschuk*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Howard F., appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in viola-

tion of General Statutes § 53a-70 (a) (2)[1] and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[2] On appeal, the defendant claims that (1) his conviction of two counts of risk of injury to a child violated his due process rights under the double jeopardy clause and (2) the trial court deprived him of his right to a fair trial by commenting on and limiting his cross-examination of a witness. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant was the victim's great uncle. In July, 2000, the victim, her mother and her three younger siblings moved into the defendant's house in Waterbury. The victim was ten years of age at the time.

At some point between July 1, 2000, and March 24, 2001, while the victim was asleep on the couch in the defendant's living room in the downstairs part of the house, the victim was awakened by the defendant, who was shaking her arm. Upon the victim's awakening, the defendant told the victim to remove her pants and underwear. The defendant then instructed the victim to bend over and assume a "prayer position." The defendant positioned himself behind the victim and inserted his penis into her vagina.

On another occasion during that same period of time, while the victim was asleep on the floor of an upstairs bedroom, she was again awakened by the defendant.

---

[1] General Statutes § 53a-70 (a) (2) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53-21 (a) (2) provides in relevant part: "Any person who . . . has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a . . . class B felony . . . ."

The defendant told the victim "to do the whole process over again." The defendant touched the victim on her breasts, buttocks and groin area, both over and under her clothing. The defendant then had vaginal intercourse with the victim. While this occurred, the victim was scared and cried silently.

On March 24, 2001, the victim became ill at school, vomiting twice. The school nurse called the victim's aunt, who picked the victim up from school. After picking the victim up at school, the victim's aunt purchased a pregnancy test from a pharmacy. The pregnancy test revealed that the victim was pregnant. At that point, the victim told her mother and three relatives what the defendant had done to her. The victim was then taken to Waterbury Hospital, where it was confirmed that the victim was approximately fourteen weeks pregnant.

Because of her age and lack of physical development,[3] the victim's pregnancy was terminated on March 28, 2004. The victim was eleven years old at that time. DNA testing of blood drawn from the victim and the defendant and of the fetus' tissue resulted in a finding consistent with the defendant being the paternal contributor to the fetal tissue.

The defendant subsequently was arrested and, following a jury trial, convicted of one count of sexual assault in the first degree and two counts of risk of injury to a child. The defendant was sentenced to a total effective term of thirty years imprisonment. This appeal followed.

I

The defendant first claims that his conviction of two counts of risk of injury to a child violated the prohibition

[3] Because victim's pelvic area was not yet fully developed, the fetus would not have been deliverable.

against double jeopardy under both the federal and state constitutions.[4] We disagree.

The defendant did not preserve this claim at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] "A defendant may obtain review of a double jeopardy claim, even if it is unpreserved, if he has received two punishments for two crimes, which he claims were one crime, arising from the same transaction and prosecuted at one trial . . . even if the sentence for one crime was concurrent with the sentence for the second crime." (Citation omitted.) *State* v. *Crudup*, 81 Conn. App. 248, 252, 838 A.2d 1053, cert. denied, 268 Conn. 913, 845 A.2d 415 (2004). Accordingly, we will review the defendant's claim. Because the defendant's claim presents an issue of law, our review is plenary. Id.

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . This constitutional provision is applicable to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee serves three separate functions: (1) It protects against a second prosecution for the same offense after acquittal. [2] It protects against

[4] Because the defendant has not provided a separate and distinct analysis of his claim under the state constitution, we address only his federal constitutional claim. See *State* v. *Joyce*, 243 Conn. 282, 288 n.6, 705 A.2d 181 (1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998).

[5] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense [in a single trial]." (Citations omitted; internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 360–61, 796 A.2d 1118 (2002). The defendant's claim in this appeal implicates the last of these three functions.

"The double jeopardy analysis in the context of a single trial is a two part process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. . . . [T]he role of the constitutional guarantee [against double jeopardy] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense. . . . On appeal, the defendant bears the burden of proving that the prosecutions are for the same offense in law and fact." (Citations omitted; internal quotation marks omitted.) Id., 361.

It is the defendant's claim on appeal that his conviction of two counts of risk of injury to a child violated the prohibition against double jeopardy. The defendant's claim is premised on his belief that it would violate the double jeopardy clause if he were convicted of both sexual assault in the first degree and risk of injury to a child for the events that transpired downstairs in his living room. Therefore, the defendant argues that both risk of injury counts had to have been based on the events that transpired upstairs in the bedroom. Because the defendant claims that the actions underlying each count occurred during the same act or transaction, he argues that his conviction of two counts of risk of injury

to a child violated the prohibition against double jeopardy. We disagree.

A

We initially note that the premise underlying the defendant's claim, that it would violate the prohibition against double jeopardy to be convicted of both sexual assault in the first degree and risk of injury to a child for the assault that occurred in the living room, was raised for the first time in the defendant's reply brief. "It is a well established principle that arguments cannot be raised for the first time in a reply brief. . . . Claims of error by an appellant must be raised in his original brief . . . so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Citations omitted; internal quotation marks omitted.) *Kelley* v. *Tomas*, 66 Conn. App. 146, 163–64, 783 A.2d 1226 (2001). Accordingly, we decline to review this aspect of the defendant's claim.[6]

B

It is the defendant's claim that both risk of injury counts arose from the same act or transaction, namely the events that transpired in the bedroom. The defen-

---

[6] Even if we were to address the defendant's claim, it is without merit. We recently rejected a similar argument in *State* v. *Rivera*, 84 Conn. App. 245, 247–50, 853 A.2d 554, cert. denied, 271 Conn. 934, 861 A.2d 511 (2004), in which we held that because risk of injury to a child "requires proof that the contact was made in a sexual and indecent manner likely to impair the health or morals of the child, while sexual assault in the second degree does not," the two counts were not the same for double jeopardy purposes. Id., 249. Although *Rivera* dealt with a double jeopardy claim involving risk of injury to a child and sexual assault in the second degree, the analysis in *Rivera* is applicable here.

dant contends that there was "no competent evidence placed before the jury to allow it to find that both counts of risk of injury to a [child] were for any conduct other than a series of acts or transaction[s] during a discrete period of time in the bedroom." The state counters that the first risk of injury count related to the events that transpired in the bedroom and that the second risk of injury count related to the events that transpired in the living room. We agree with the state.

As we have stated: "[T]o prevail on his claim, the defendant must show (1) that the charged offenses arose out of the same act or transaction, and (2) that the two convictions are in reality the same offense. Multiple punishments are forbidden only if both conditions are met. . . . For the first prong of the analysis of the defendant's claim, it is necessary to review the information and the bill of particulars." (Citation omitted; internal quotation marks omitted.) *State* v. *Vasquez*, 66 Conn. App. 118, 123–24, 783 A.2d 1183, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001).

Our review of the record leads us to the conclusion that the two risk of injury counts arose from two separate incidents, one occurring in the living room and one occurring in the bedroom. In the first risk of injury count, the state alleged that, between July 1, 2000, and March 24, 2001, the defendant had contact with the intimate parts of the victim in a sexual and indecent manner, specifically, the victim's breasts and genital area, thereby likely impairing the morals of the victim, who was a child under the age of sixteen. In the second risk of injury count, the state alleged that, between July 1, 2000, and March 24, 2001, the defendant subjected the victim to contact with his penis in a sexual and indecent manner, thereby likely impairing the morals of the victim, who was a child under the age of sixteen. According to the bill of particulars, the first risk of injury count specified that the defendant "touched the

genital and breast area of the victim with his hand, finger or fingers, both above and beneath her clothes." The bill of particulars specified that under the second risk of injury count, the defendant "made the [victim] get on her knees on the bed. He then penetrated her from the rear. His penis made contact with [the victim's] intimate parts . . . ."

Although neither the substituted amended information nor the bill of particulars specified where each assault occurred, they both describe separate acts by the defendant. Furthermore, the information and the bill of particulars state that both risk of injury counts arose from actions that occurred "on a date or dates between approximately July 1, 2000, and March 24, 2001 . . . ." Neither document stated that each count arose from actions that occurred on the same date and at the same time. Looking only to the information and the bill of particulars, we cannot conclude that both risk of injury counts arose from the assault that occurred in the upstairs bedroom.

In *State* v. *Miranda*, 260 Conn. 93, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002), our Supreme Court, in addressing a claim of whether a defendant's conviction of two counts of assault in the first degree violated the prohibition against double jeopardy, looked at the evidence presented at trial to conclude that each count of assault arose from a separate act of omission. Id., 123–24. From the evidence presented at trial in this case, it is clear that the first count of risk of injury arose from the defendant's conduct in the bedroom, while the second risk of injury count arose from the defendant's conduct in the living room. The victim testified that while she was asleep in the defendant's living room, she was awoken by the defendant, who told her to remove her pants and underwear. The defendant then told the victim to assume a prayer position, at which time the

defendant inserted his penis into the victim's vagina. The victim also testified that on another occasion, while she was sleeping in the bedroom, she again was awoken by the defendant. Upon the victim's awakening, the defendant touched the victim, both over and underneath her clothing, on her breasts and in the area of her groin and buttocks. The victim also testified that the defendant had vaginal intercourse with her from behind. Accordingly, our review of the record leads us to conclude that the first risk of injury count was based on the defendant's actions upstairs in the bedroom, while the second risk of injury count was based on the defendant's actions downstairs in the living room. Therefore, the defendant's claim that both risk of injury counts arose from the assault that occurred in the bedroom is without merit.

C

Even if we agreed with the defendant's claim that both risk of injury counts arose from the assault that occurred in the bedroom, the defendant's conviction of two counts of risk of injury to a child did not violate the prohibition against double jeopardy. The defendant's actions that occurred in the bedroom properly would have resulted in the state's charging the defendant with two separate counts of risk of injury to a child.

The defendant argues: "For purposes of culpability, it does not matter whether the defendant had contact with the [victim's] intimate parts, or subjects the [victim] to have contact with the defendant's intimate parts, as long as it was in a single place, close enough in time to be the same transaction." The essence of the defendant's argument is that everything that occurred in the bedroom comprised a single transaction. If we adopted the defendant's reasoning, the commission of one act likely to impair the health and morals of a minor would insulate him from further criminal liability for

any additional acts of the same character perpetrated on the same victim in subsequent encounters. Such a result defies rationality. See *State* v. *Snook*, 210 Conn. 244, 262, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989).

"The proper double jeopardy inquiry when a defendant is convicted of multiple violations of the same statutory provision is whether the legislature intended to punish the individual acts separately or to punish only the course of action which they constitute." (Internal quotation marks omitted.) *State* v. *Miranda*, supra, 260 Conn. 120. "[D]ouble jeopardy prohibits multiple punishments for the same offense in the context of a single trial. Nonetheless, distinct repetitions of a prohibited act, *however closely they may follow each other* . . . may be punished as separate crimes without offending the double jeopardy clause. . . . The same transaction, in other words, may constitute separate and distinct crimes where it is susceptible of separation into parts, each of which in itself constitutes a completed offense. . . . [T]he test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent and are such as are made punishable by the [statute]. . . . A different view would allow a person who has committed one sexual [act] upon a victim to commit with impunity many other such acts during the same encounter. . . . *State* v. *Cassidy*, 3 Conn. App. 374, 388, 489 A.2d 386 ([E]ach assault upon the victim involved a separate act of will on the part of the defendant and a separate indignity upon the victim. . . . [T]he legislative intention was that each assault should be deemed an additional offense. . . . To interpret the statute otherwise would be to strip it of all its sense. . . .), cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985)." (Citation omitted; emphasis in origi-

nal; internal quotation marks omitted.) *State* v. *Scott,* 270 Conn. 92, 99–100, 851 A.2d 291 (2004).

In the present case, the defendant committed two separately punishable offenses of risk of injury to a child. The defendant first touched the victim's breasts and genital area with his hand, both above and beneath her clothing. The defendant then made the victim get on her knees and subjected her to vaginal intercourse. Each act constituted a basis for a separate risk of injury count, irrespective of the brief period of time separating each act. Therefore, the two counts of risk of injury to a child did not arise out of the same act or transaction. Accordingly, the defendant's protection against double jeopardy was not violated.[7]

Accordingly, the defendant's claim fails under the third prong of *Golding* because the alleged constitutional violation did not clearly exist and did not clearly deprive him of a fair trial.

II

The defendant's next claim is that the trial court violated his right to a fair trial by improperly restricting

[7] Neither the bill of particulars nor the substituted amended information specifically identified whether the acts underlying the second risk of injury count occurred in the living room or the bedroom. In a footnote in the state's brief, the state argues that the defendant's conduct in either location would support a conviction on the second count of risk of injury. While we agree with the state that there was evidence that in each instance the defendant subjected the victim to vaginal intercourse, which would support a conviction for risk of injury to a child, the state's argument, if accepted, could lead to unanimity problems, i.e., jurors not all agreeing to the same count for a conviction. "[T]he unanimity requirement as enunciated in [*United States* v. *Gipson,* 553 F.2d 453 (5th Cir. 1977)] and its progeny requires the jury to agree on the factual basis of the offense. The rationale underlying the requirement is that a jury cannot be deemed to be unanimous if it applies inconsistent factual conclusions to alternative theories of criminal liability." (Internal quotation marks omitted.) *State* v. *Spigarolo,* 210 Conn. 359, 389, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). Because the defendant does not raise this argument, however, we need not address it here.

his second recross-examination of the state's forensic expert and improperly commenting on his second recross-examination of that witness. We disagree.

The defendant concedes that his claim is unpreserved and seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40.[8] Because the record before us is adequate to review and the defendant's claim is of constitutional magnitude alleging the violation of a fundamental right, we will review his claim.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim. During its case-in-chief, the state called as a witness Christine Roy, a criminalist in the forensic biology section of the state forensic science laboratory. Roy was accepted as an expert witness in the field of DNA testing.[9] On direct examination, Roy testified that she performed DNA testing on samples of blood obtained from the defendant and the victim, as well as on a sample of the fetal tissue obtained from the victim's fetus. The results of Roy's testing, which were verified by a second individual, were consistent with the defendant being the paternal contributor to the fetal tissue. Roy testified that although there are other individuals who could have been the paternal contributor to the fetal tissue, there was only a one in eight million chance that another African-American could be the paternal contributor.[10]

On cross-examination, Roy testified that even though it appeared that the DNA results were consistent with the defendant being the paternal contributor, someone else could have been the paternal contributor. On redi-

[8] See footnote 5.

[9] Roy testified that DNA "stands for deoxyribonucleic acid and it is the genetic material that determines who we are both as human beings and as individuals. . . . DNA is a forensic tool that we can use to either include or exclude a person as the source of a stain and it could be used in paternity testing . . . ."

[10] The defendant was African-American.

rect examination, Roy again testified that the results of the DNA testing were consistent with the defendant being the paternal contributor to the fetal tissue. On recross-examination, Roy answered in the affirmative when asked: "[D]espite all the questions the prosecutor has asked you on follow-up, it's still possible that someone else is the paternal contributor other than . . . [the defendant]?"

During the second redirect examination, Roy reiterated that the "expected frequency of individuals who could be the paternal contributor is approximately one in eight million for the African-American population." The state then asked Roy whether the statistical probabilities would increase if other populations were included. The defendant objected. In sustaining the objection, the court stated: "We've covered it. . . . I don't want to keep going back and forth. . . . I think you both made your points."

During the second recross-examination, the defendant questioned Roy about the statistical probabilities as it related to the Caucasian population, to which the state objected. In sustaining the objection, the court stated: "I'll tell you what I'm going to do. I'm going to have you both ask—[the defendant] can ask one question and [the state] can ask one question. That's it. Ask your one question. . . . I mean . . . this is going to go on forever." The defendant and the state declined the court's invitation to ask a further question. Neither party objected to the court's request.

The defendant now claims on appeal that the court's statement limited his right to fully cross-examine Roy and minimized the importance of Roy's testimony before the jury. We will address each of the defendant's claims in turn.

A

It is the defendant's claim that the court impermissibly limited a full examination of Roy by "not letting a

full and fair presentation of the evidence on the validity of the DNA results." There is no merit to this claim.

"We traditionally apply a two part analysis to determine whether a party has been deprived of effective cross-examination. First, we determine whether the defendant received the minimum opportunity for cross-examination of adverse witnesses required by the constitution. . . . If so, we then consider whether the trial court's restriction of cross-examination amounted to an abuse of discretion under the rules of evidence. . . . [T]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . This right, however, is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. . . . The trial court, in its discretion, may impose limitations on the scope of cross-examination, as long as the defendant has been permitted sufficient cross-examination to satisfy constitutional requirements. . . . The confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . .

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . .

"The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . To establish that

the court abused its discretion, the defendant bears the burden of demonstrating that the restrictions that the court imposed on the cross-examination were clearly prejudicial. . . . Once we conclude that the court's ruling on the scope of cross-examination is not constitutionally defective, we will apply every reasonable presumption in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Luis F.*, 85 Conn. App. 264, 272–73, 856 A.2d 522 (2004).

After careful review of the record, we conclude that the defendant's ability to cross-examine Roy more than satisfied constitutional standards. The defendant asserts that his "whole argument was premised on the theme that it [was] possible that another parental contributor . . . statistically [could] be the father of the child." The defendant had ample opportunity to cross-examine and recross-examine Roy thoroughly about the reliability of the DNA testing that she performed. Roy testified on direct examination and again on cross-examination and recross-examination that it was possible that another individual was the paternal contributor to the fetal tissue. It was not until the defendant attempted to question Roy during his second recross-examination that the court sought to limit the defendant's questioning. Both the state and the defendant were given wide latitude in examining Roy with repetitious and often lengthy questions. Given the fact that the defendant had more than an adequate opportunity to cross-examine and recross-examine Roy about the reliability of the DNA testing and that the court's limitation during the second recross-examination concerned a line of questioning that was covered on both cross-examination and recross-examination, there is no merit to the defendant's claim that the court's limitation dur-

ing the second recross-examination violated the constitutional standards of the sixth amendment.

Having concluded that the defendant received a constitutionally adequate opportunity to cross-examine Roy, we further conclude that the court did not abuse its discretion in restricting the defendant's second recross-examination of Roy. As we have noted, it is the defendant's burden to demonstrate that the court's restriction of cross-examination was clearly prejudicial. Id., 273. The defendant has failed to meet that burden. The defendant merely states that it was "improper and a deprivation of a fair trial for the court to limit the inquiry when, for the most part, the inquiry was legitimate as illustrated by [Roy]." Rather than illustrating how the court's limitation was prejudicial, the defendant concedes that "defense counsel did cover most of the area in cross-examination." In fact, when given the opportunity by the court to ask an additional question, the defendant declined, stating "I'm done." Accordingly, because the defendant has failed to meet his burden of establishing that the court's restriction of the second recross-examination of Roy was clearly prejudicial, the court did not abuse its discretion.

B

The defendant next claims that the court's comments during the second recross-examination of Roy minimized the importance of Roy's testimony before the jury. We disagree.

The defendant claims that the court's statement "could reasonably indicate to the jury that the court [found] the evidence and examination not credible." While we agree that a trial court "should never assume a position of advocacy, real or apparent, in a case before it, and should avoid any display of hostility or skepticism toward the defendant's case"; State v. Fisher, 82 Conn. App. 412, 424, 844 A.2d 903, cert. denied, 269

719

Conn. 911, 852 A.2d 741 (2004); the court's comments in the present case did not reflect any partiality on behalf of the court. The court merely sought to limit neutrally a line of questioning that was repetitive. The court took no position of advocacy regarding the outcome of the case and made no improper comments on the significance of the evidence presented. At no time did the court convey to the jury its opinion regarding the guilt or innocence of the defendant. See *State* v. *Lopes,* 78 Conn. App. 264, 278, 826 A.2d 1238, cert. denied, 266 Conn. 902, 832 A.2d 66 (2003). We cannot say that the court's statement in any way could be perceived as the court minimizing the importance of Roy's testimony.

Accordingly, the defendant's claim fails under the third prong of *Golding* because the alleged constitutional violation did not clearly exist and did not clearly deprive him of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.