# STATE OF CONNECTICUT *v.* JAMES SIMPSON
## (SC 18051)

Rogers, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued February 11—officially released April 29, 2008

*Elizabeth M. Inkster*, senior assistant public defender, with whom were *John Cizik*, assistant public defender, and, on the brief, *Catherine Kollet*, certified legal intern, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Amy Sedensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, James Simpson, appeals[1] from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[2] and risk of injury to a child in violation of General Statutes (Rev. to 2003) § 53-21 (a) (2).[3] On appeal, the defendant claims

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 53a-70 (a) provides: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[3] General Statutes (Rev. to 2003) § 53-21 (a) provides: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

that the admission into evidence of portions of a video-taped interview of the victim violated: (1) this court's decision in *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), which permits the limited substantive use of prior inconsistent statements; and (2) his rights under the confrontation clause of the sixth amendment to the United States constitution[4] as articulated by *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We disagree, and affirm the judgment of the trial court.

The record reveals the procedural history and the following facts, which the jury reasonably could have found. The defendant is the great uncle of the victim, E.[5] In the early spring of 2003, the defendant babysat for E, who was then five years old, and her older brother, D, at the defendant's apartment in Waterbury. During that time, the defendant engaged in numerous sexual acts with E, including cunnilingus and digital and penile penetration of her vagina. E's family did not become aware of the defendant's conduct until May, 2003, when E approached Annette Dillan, a social worker at her elementary school, and complained of vaginal itching; E then told Dillan and the school nurse that the defendant had kissed her vagina.

Dillan notified E's grandmother, C,[6] and the department of children and families (department) about E's

---

[4] "The sixth amendment to the United States constitution provides in relevant part: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .' The confrontation clause of the sixth amendment is made applicable to the states through the due process clause of the fourteenth amendment." *State* v. *Sandoval*, 263 Conn. 524, 532 n.17, 821 A.2d 247 (2003).

[5] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[6] C took E to the office of Douglas Curtiss, her pediatrician, for evaluation and treatment, and a physician's assistant there diagnosed E with perineal irritation, which has a variety of causes, including sexual abuse.

allegations, and the department initiated an investigation that was continued by Jacqueline Ortiz, a Waterbury police detective. On June 6, 2003, Sharon Kelly of the Child Guidance Center in Waterbury conducted a videotaped interview of E in conjunction with that investigation. During that interview, E stated that the defendant had kissed her vagina, and also had penetrated her vagina with his penis. E also was examined by Judith Kanz, a pediatric nurse practitioner at Saint Mary's Hospital in Waterbury, who concluded that E exhibited physical signs that were consistent with sexual abuse.[7]

The state subsequently charged the defendant with one count of sexual assault in the first degree in violation of § 53a-70 (a) (2), and one count of risk of injury to a child in violation of § 53-21 (a) (2). The defendant was tried before a jury,[8] and the trial court admitted into evidence, over his objection, portions of the videotaped interview of E pursuant to *State* v. *Whelan*, supra, 200 Conn. 743. The trial court rendered a judgment of conviction in accordance with the jury's verdict of guilty on both counts. The trial court sentenced the defendant to a total effective sentence of fifteen years imprisonment, with five years special parole. This appeal followed.

On appeal, the defendant claims that the trial court improperly admitted portions of E's videotaped interview for substantive purposes pursuant to *State* v. *Whelan*, supra, 200 Conn. 743. The defendant also con-

---

[7] Specifically, Kanz noted "mounding" on the lower portion of the victim's hymen, a sign that is consistent with, but not always caused by, sexual abuse. Kanz testified, however, that the victim lacked "internal columns" in her vagina, a condition that, if present naturally, could cause that mounding.

[8] The defendant testified on his own behalf at trial and denied all of E's allegations. Despite testimony by D and E to the contrary, the defendant further testified that he never shared a bed with E, helped her in the bathroom, saw her unclothed or was unclothed around her.

tends that the admission of the videotaped statement violated *Crawford* v. *Washington,* supra, 541 U.S. 36.

The following additional facts and procedural history are relevant to the defendant's claims on appeal. Citing the Appellate Court decision in *State* v. *Luis F.,* 85 Conn. App. 264, 856 A.2d 522 (2004), the state offered portions of the videotaped interview into evidence to establish that the defendant had penetrated E's vagina with his penis, as well as digitally and orally.[9] The defen-

[9] The videotape at issue in this appeal presented to the jury the following portion of the child guidance interview of E conducted by Kelly, with the aid of anatomically correct dolls:

"Q. Do you have a name for that?

"A. Yeah.

"Q. What's your name for that?

"A. A peter.

"Q. A peter. Did Uncle Jimmy ever touch you with his peter?

"A. Yeah.

"Q. Tell me about that.

"A. Okay. That's Uncle Jimmy—that's Uncle Jimmy—

"Q. Which one?

"A. This is Uncle Jimmy.

"Q. Okay.

"A. He—he laid down.

"Q. Mm-hmm.

"A. This is a girl.

"Q. No, it's a boy.

"A. But then why does it have nickers on.

"Q. It's long shorts. Okay. So show me how he touched you with his peter.

"A. Like this.

"Q. Okay. Was your clothes on or off, when he touched you with his peter?

"A. On.

"Q. On. How did he touch you with his peter, if your clothes was on?

"A. Cause my clothes was on.

"Q. Was your clothes all the way on or a little bit on?

"A. All the way on.

"Q. So did he touch you with his peter on top of the clothes or underneath the clothes? Was it on top of the clothes or underneath the clothes?

"A. Underneath.

"Q. Okay. How did he get his peter underneath your clothes, if your clothes was on?

"A. Cause he did—he took my pants off.

"Q. Okay.

"A. He kissed it. He did it.

dant objected to the admission of the videotape on the

"Q. Okay. Did his peter go on top of your coochie or inside your coochie?

"A. And I did this to him.

"Q. Oh, are you telling the truth?

"A. Yes.

"Q. Remember we only talk about true things and real things. Okay?

"A. I am. I did this to him.

"Q. Here, let me see him. Let me see. Whee. Okay. So, did you see Uncle Jimmy's peter? Tell me what Uncle Jimmy's peter looked like. What color is it?

"A. White.

"Q. Okay. And what does it look like?

"A. I can't tell you.

"Q. Do you want to draw it? Here.

"A. Yeah.

"Q. Draw it for me. Show me what it looks like.

"A. Do you want me to draw a peter?

"Q. Show me what Uncle Jimmy's peter looks like. Okay. When he touched you with his peter, did anything come out of his peter?

"A. No.

"Q. Did anything come out of your coochie?

"A. No.

"Q. Was he—what? Go ahead.

"A. Are you nuts? (Inaudible)

"Q. Huh?

"A. Are you nuts?

"Q. Am I nuts?

"A. Yes.

"Q. Well, I don't know, I don't think so.

"A. You just said that. You're nuts, that's what you said. That's what you said, I heard you.

"Q. Was Jimmy—did Jimmy have his clothes on or off, when he touched you with his peter?

"A. I can't take this off. Okay.

"Q. [E]?

"A. Do you want me to draw it?

"Q. Okay.

"A. Okay. (Inaudible)

"Q. Did Uncle Jimmy have his clothes on or off, when he touched you with his peter?

"A. Off.

"Q. Off. Okay. Did his peter touch you on the top of your coochie or inside your coochie?

"A. Inside.

"Q. What did that feel like?

"A. Hurt.

ground that E's trial testimony was not inconsistent with her statements on the videotape because she had not recanted or disavowed portions of that interview; the defendant argued that her trial testimony "is incomplete, not inconsistent . . . ."[10] The defendant also

"Q. Okay. Did he say anything to you when he did that?
"A. Do you have bangs?
"Q. No.
"A. These are your bangs?
"Q. They're all grown out.
"A. These are your bangs right here.
"Q. Mm-hmm.
"A. Now, your hair's all messed up.
"Q. I know. All right.
"A. Now—
"Q. Did anything else happen with Jimmy that I should know? Tell me."

[10] Specifically, the defendant argued: "Your Honor, I don't think that the tape is admissible under *Luis F.* or *Whelan.* I don't think that the witness here is recanting, I don't think she's disavowing the interview that she did before, I think maybe there's parts that she doesn't remember. I think, if anything, her testimony is incomplete, not inconsistent, there's nothing that she's saying now that is materially—the things she said now, she said on the videotape.

"And I know that there's one thing that she says in the interview that she hasn't said and that's what the state is trying to get in. But I don't think that factually this scenario fits *Luis F.* or *Whelan* and—and I don't think the tape should be admissible for [substantive] purposes."

The defendant reiterated his claim that the videotaped statement is "not inconsistent. When she's asked about this, she's saying I don't remember. She's not testifying, so, if—if the state is going to play you a portion of the tape, they're gonna play you the portion of the tape where she says the things that she now says she doesn't remember and my argument is still that it's not inconsistent. She's testified consistently with the interview on the tape and just doesn't remember that one last thing. So I don't know if the court, only watching [ten] minutes of the tape, is gonna give you enough context as—as to what she's testified to and what's on that tape."

Finally, the defendant responded to the trial court's questions about what makes the present case different than *Luis F.*, and argued that "they talk about the witness being evasive in *Luis F.* and I don't think this witness is showing any evidence of being evasive. She's not saying I—you know, I did this videotape and I lied on that videotape. She's testifying—and if Your Honor [would] watch the entire videotape, she's testifying fairly consistently with what she said at the beginning of that videotape and saying she doesn't remember anything else."

The trial court then stated that "*Luis F.* said that a prior inconsistent statement can be admitted for substantive purposes . . . if there's a lack of recollection on the part of the complaining witness and that's—that's exactly what we have here."

claimed that the admission of the videotape would violate *Crawford* v. *Washington,* supra, 541 U.S. 36, because he would not be able to cross-examine E effectively. After viewing the videotape, the trial court reserved decision.

The following day at trial, the trial court and the parties further discussed the state's use of the videotape. The trial court noted that the videotape possibly could be used to refresh E's recollection about what had happened to her, and would not necessarily need to be played for the jury. The defendant agreed to this, and the videotape was played for the victim, who maintained that she did not remember the defendant touching her body in any way with his penis. Thereafter, Ortiz testified and laid the foundation for the admissibility of the videotape as a fair and accurate representation of the interview. At this point, the videotape was presented to the jury; see footnote 9 of this opinion; and the trial court instructed the jury as to its proper use both to evaluate the credibility of the parties in the case, as well as substantive evidence under *Whelan.*[11]

I

It is well settled that, "[a]n out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." (Internal quotation marks omitted.) *State* v. *Kirby,* 280 Conn. 361, 373, 908 A.2d 506 (2006). In *State* v. *Whelan,* supra, 200 Conn. 753, however, we adopted a hearsay exception "allowing the substantive use of prior written inconsis-

The defendant responded, "[b]ut it also says you have to take a look at the testimony as a whole. And the testimony as a whole in *Luis F.* was characterized, as I said, as evasive and she was disavowing—she was recanting the videotape. I think, if you take a look at the testimony in the whole—here, that's not what's happening."

[11] The defendant did not object to these jury instructions, and they are not at issue in this appeal.

tent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination." "This rule has also been codified in § 8-5 (1) of the Connecticut Code of Evidence, which incorporates all of the developments and clarifications of the *Whelan* rule that have occurred since *Whelan* was decided."[12] *State* v. *Pierre*, 277 Conn. 42, 58, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006). In addition to signed documents, the *Whelan* rule also is applicable to tape-recorded statements that otherwise satisfy its conditions. See, e.g., *State* v. *Alvarez*, 216 Conn. 301, 313, 579 A.2d 515 (1990); see also *State* v. *Luis F.*, supra, 85 Conn. App. 267–69 (*Whelan* rule applicable to videotapes).

The *Whelan* hearsay exception applies to "a relatively narrow category of prior inconsistent statements . . . [and was] carefully limited . . . to those prior statements that carry such substantial indicia of reliability as to warrant their substantive admissibility. As with any statement that is admitted into evidence under a hearsay exception, a statement that satisfies the *Whelan* criteria may or may not be true in fact. But, as with

---

[12] Section 8-5 of the Connecticut Code of Evidence (2000), which incorporates the rule of *State* v. *Whelan*, supra, 200 Conn. 753, provides in relevant part: "The following are not excluded by the hearsay rule, provided the declarant is available for cross-examination at trial:

"(1) Prior inconsistent statement. A prior inconsistent statement of a witness, provided (A) the statement is in writing, (B) the statement is signed by the witness, and (C) the witness has personal knowledge of the contents of the statement. . . ."

Section 8-5 of the Connecticut Code of Evidence was recently amended, and the version in effect as of January 1, 2008, now provides in relevant part: "The following are not excluded by the hearsay rule, provided the declarant is available for cross-examination at trial:

"(1) Prior inconsistent statement. A prior inconsistent statement of a witness, provided (A) the statement is in writing or otherwise recorded by audiotape, videotape, or some other equally reliable medium, (B) the statement or recording is duly authenticated as that of the witness, and (C) the witness has personal knowledge of the contents of the statement. . . ."

any other statement that qualifies under a hearsay exception, it nevertheless is admissible to establish the truth of the matter asserted because it falls within a class of hearsay evidence that has been deemed sufficiently trustworthy to merit such treatment. Thus, as with all other admissible nonhearsay evidence, we allow the fact finder to determine whether the hearsay statement is credible upon consideration of all the relevant circumstances. Consequently, once the proponent of a prior inconsistent statement has established that the statement satisfies the requirements of *Whelan*, that statement, like statements satisfying the requirements of other hearsay exceptions, is presumptively admissible." *State* v. *Mukhtaar*, 253 Conn. 280, 306, 750 A.2d 1059 (2000).

Before turning to the defendant's specific claims on appeal, we note that "[t]he admissibility of evidence, including the admissibility of a prior inconsistent statement pursuant to *Whelan*, is a matter within the . . . discretion of the trial court. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *State* v. *Pierre*, supra, 277 Conn. 56; accord *State* v. *Saucier*, 283 Conn. 207, 217–19, 926 A.2d 633 (2007) (Adopting " 'hybrid' " approach to review of hearsay claims and concluding that "[w]e review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . In other words, only after a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related

to the rule of evidence under which admission is being sought." [Citation omitted.]).

## A

We begin with the defendant's claim that the statements in the videotaped interview are inadmissible under the *Whelan* rule because they were not made under circumstances that demonstrate their reliability and trustworthiness. Specifically, the defendant contends that "E lacked credibility and the capacity to provide reliable statements" because of her mental health and behavioral problems.[13] The defendant also argues that E's answers to the interview questions are unreliable because those questions were inappropriately leading, rather than open-ended, and E was "hyperactive and fidgety" throughout the entire interview, occasionally giving inappropriate responses to the questions posed to her. See footnote 9 of this opinion. In response, the state argues, inter alia, that this claim was not preserved for appellate review because the defendant's failure to object to the videotape on this ground deprived the trial court of the opportunity to fulfill its gatekeeping responsibilities with respect to the reliability of *Whelan* evidence under *State* v. *Mukhtaar*, supra, 253 Conn. 306–307.[14] We agree with the state

[13] As the defendant points out, the record reveals that E, who was separated at birth from her mother and lived in foster care for the first five years of her life, had mental health problems that required medication and had manifested themselves with manipulative and occasionally violent behavior.

[14] In *State* v. *Mukhtaar*, supra, 253 Conn. 306–307, we concluded that, although prior inconsistent statements that satisfy the requirements of *Whelan* are "presumptively admissible," it is possible that such a statement "may have been made under circumstances so unduly coercive or extreme as to grievously undermine the reliability generally inherent in such a statement, so as to render it, in effect, not that of the witness. In such circumstances, the trial court must act as a gatekeeper to ensure that the statement does not go to the jury for substantive purposes. We emphasize, however, that the linchpin of admissibility is reliability: the statement may be excluded as substantive evidence only if the trial court is persuaded, in light of the circumstances under which the statement was made, that the statement is so untrustworthy that its admission into evidence would subvert the fairness

and conclude that the defendant's reliability claim is unreviewable because of his failure to object to the videotape on this basis.

"We have stated that [t]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Cabral*, 275 Conn.

of the fact-finding process. In the absence of such a showing by the party seeking to exclude a statement that meets the *Whelan* criteria, the statement is admissible as substantive evidence; like all other evidence, its credibility is grist for the cross-examination mill. Thus, because the requirements that we established in *Whelan* provide a significant assurance of reliability, it will be the highly unusual case in which a statement that meets the *Whelan* requirements nevertheless must be kept from the jury." See also id., 308 (concluding that trial court properly could have credited police officer's testimony that declarant appeared coherent and acted normally when he signed statement, which he had read and found to be true); *State* v. *Hersey*, 78 Conn. App. 141, 150–52, 826 A.2d 1183 (trial court conducted hearing under *Mukhtaar* and properly could have concluded that circumstances of police interview with victim were not coercive, and defendant's claims that victim was under influence of alcohol and various medications and did not remember making statement went to weight to be accorded to her statement, not its admissibility), cert. denied, 266 Conn. 903, 832 A.2d 65 (2003).

514, 530–31, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005); id., 531 (declining to review claim that tape-recorded statements were inadmissible under coconspirator hearsay exception when objection at trial was on "different" ground that listener was acting as agent of police when statements were made); see also Practice Book § 5-5.[15]

This rule limiting appellate review of evidentiary claims to the ground asserted at trial applies with equal force to *Whelan* issues. See, e.g., *State* v. *Meehan*, 260 Conn. 372, 388–89, 796 A.2d 1191 (2002) (declining to reach claim that "*Whelan* requires, inter alia, a finding that memory loss is feigned, not actual, in order for a prior statement to constitute an inconsistent statement" because objection at trial was limited to grounds that proffered grand jury testimony was unsigned, not otherwise sufficiently reliable or trustworthy, and that witness' "memory loss rendered her functionally unavailable for cross-examination"); *State* v. *Marshall*, 87 Conn. App. 592, 597–98, 867 A.2d 57 (declining to review claims that statement in document was not sufficiently inconsistent and not made under necessary conditions of reliability and trustworthiness because objection at trial was solely on ground that declarant had not verified document), cert. denied, 273 Conn. 925, 871 A.2d 1032 (2005).

Indeed, our decision in *State* v. *Newsome*, 238 Conn. 588, 682 A.2d 972 (1996), is dispositive of the defendant's claim. In *Newsome*, the defendant claimed on appeal that the trial court had, at his probable cause hearing,

---

[15] Practice Book § 5-5 provides: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he or she desires it to go upon the record, before any discussion or argument is had. Argument upon such objection or upon any interlocutory question arising during the trial of a case shall not be made by either party unless the judicial authority requests it and, if made, must be brief and to the point."

improperly admitted into evidence a witness' statement to the police that he had witnessed the defendant commit the murder at issue. Id., 594–95. Specifically, the defendant claimed that the trial court improperly had admitted the statement into evidence under *Whelan* "because it failed to evince a basis for [the witness'] personal knowledge of the factual allegations it contained, since the statement 'failed to state in so many words that the declarant actually saw the defendant shoot [the victim],' and, therefore, it 'left ambiguous whether the declarant had the "personal knowledge" prerequisite to admitting' the statement into evidence under *Whelan*. Moreover, the defendant [also] claim[ed] that the statement failed to provide sufficient detail regarding the incident and that *the statement was otherwise too unreliable to be admitted.*" (Emphasis added.) Id., 595. We declined to review these claims on appeal because the defendant's objection to the statement was based solely on the ground that it "was not inconsistent with his testimony and, therefore, was not admissible under *Whelan*." Id., 596.

We conclude that the defendant's *Whelan* claim about the reliability of E's statements is unreviewable on appeal. The defendant's objections at trial, while well argued, were confined solely to whether E's trial testimony was inconsistent with her videotaped statement. See footnote 10 of this opinion. Accordingly, because the trial court did not have the opportunity to perform its gatekeeping role under *State* v. *Mukhtaar*, supra, 253 Conn. 306–307; see footnote 14 of this opinion; this claim is not adequately preserved for appellate review.[16]

---

[16] The defendant alternatively requests review of this claim under the plain error doctrine. "[T]he plain error doctrine, which is now codified at Practice Book § 60-5 . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error

B

We next turn to the defendant's claim that the trial court abused its discretion by concluding that E's trial testimony was, for the purpose of admissibility under *Whelan,* inconsistent with her videotaped statements. Specifically, the defendant argues that the trial court improperly relied on *State* v. *Luis F.,* supra, 85 Conn. App. 266–67, because that case involved a witness who had recanted her accusations while testifying at trial. The defendant contends that E never disavowed or recanted her accusations, and did not answer, until she was pressured, that she did not recall the defendant penetrating her vagina with his penis. In response, the state argues that, in view of E's testimony as a whole, the trial court properly exercised its discretion because she testified that she could not remember telling the interviewers that the defendant had put his penis inside her vagina. We agree with the state.

---

is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . Implicit in this very demanding standard is the notion, explained previously, that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, a] defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *Fagan,* 280 Conn. 69, 86–87, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

Our review of the record reveals that the defendant elicited testimony about the proper way to question a child complainant about alleged sexual abuse, as well as specific testimony about E's mental health problems, and then ably used that evidence to attack the credibility of her statements in his closing arguments to the jury. Thus, even if we were to assume that the trial court had improperly admitted that portion of the interview, we cannot conclude that the admission of E's videotaped statement "undermined the fairness or integrity of the trial afforded to the defendant . . . [or] that the verdict constituted manifest injustice to the defendant or will lead to diminished confidence in our judicial system." *State* v. *Toccaline,* 258 Conn. 542, 553, 783 A.2d 450 (2001).

"Whether there are inconsistencies between the two statements is properly a matter for the trial court. . . . Inconsistencies may be shown not only by contradictory statements but also by omissions. In determining whether an inconsistency exists, the testimony of a witness as a whole, or the whole impression or effect of what has been said, must be examined. . . . Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior statement . . . and the same principle governs the case of the forgetful witness. . . . A statement's inconsistency may be determined from the circumstances and is not limited to cases in which diametrically opposed assertions have been made. *Thus, inconsistencies may be found in changes in position and they may also be found in denial of recollection.* . . . The trial court has considerable discretion to determine whether evasive answers are inconsistent with prior statements." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Whelan,* supra, 200 Conn. 748–49 n.4; id. (trial court properly concluded that witness' testimony was inconsistent when he testified at trial that "he had no recollection of certain facts within" his statement and "was unable to recall the specific details of the fight"); see also, e.g., *State* v. *Bell,* 283 Conn. 748, 768 n.18, 931 A.2d 198 (2007) ("[t]his court previously rejected a claim that a trial court improperly had determined that a witness' testimony at trial—that he could not recall certain facts from a prior statement—was inconsistent with his prior statement").

We discuss briefly the Appellate Court's well reasoned analysis and application of this general rule in *State* v. *Luis F.,* supra, 85 Conn. App. 264, which was relied on by both the parties and the trial court in the present case. In that case, the teenage victim stated in a videotaped interview that the defendant, her father, inappropriately had touched her breasts and vagina,

and also had penetrated her vagina with his penis on two occasions. Id., 266. At trial, both the victim and her mother recanted their prior statements to the police about the abuse, and the "victim testified at trial that she had 'made everything up' " in order to get out of the family's house, and also "that she did not recall stating during her interview . . . that the defendant had sexual intercourse with her." Id., 267. The Appellate Court noted that the "dispositive issue [was] whether the victim's statements on the videotape were inconsistent with her testimony at trial." Id., 269–70. That court cited *State* v. *Whelan*, supra, 200 Conn. 748 n.4, and stated that, "[a]lthough *Whelan* is not limited to diametrically opposed assertions, such is the case here" because of the victim's recantations. *State* v. *Luis F.*, supra, 270. Significantly, the Appellate Court further stated that "*the victim's testimony that she did not recall stating that the defendant had sexual intercourse with her can be considered inconsistent with her prior statement that the defendant had sexual intercourse with her*, as she presented herself as a forgetful witness. The court was well within its discretion to consider the victim's testimony both inconsistent with her prior statements and evasive." (Emphasis added.) Id.; see also *State* v. *Francis D.*, 75 Conn. App. 1, 18, 815 A.2d 191 ("[t]he victim's inability to recall material facts . . . clearly satisfies the inconsistency element" of *Whelan*), cert. denied, 263 Conn. 909, 819 A.2d 842 (2003).

As we previously noted, even after attempts to refresh her memory, E testified at trial that she did not remember the defendant touching her body in any way with his penis. Because it is well settled that failures of memory and omissions in trial testimony satisfy the inconsistency element of *Whelan*, we conclude that the trial court did not abuse its broad discretion by relying on *State* v. *Luis F.*, supra, 85 Conn. App. 269–70, in

admitting portions of the videotaped interview into evidence.

## II

The defendant next argues that the admission of the videotaped interview into evidence violated his federal confrontation clause rights under *Crawford* v. *Washington,* supra, 541 U.S. 36.[17] Specifically, the defendant argues that the videotaped interview is inadmissible under *Crawford* because: (1) it was "testimonial" in nature because it was performed in conjunction with the state's investigation of the allegations against him; and (2) E was "functionally unavailable" for cross-examination because she testified that she did not recall making the statements on the videotape. In response, the state argues that the defendant's claims are foreclosed by our recent decisions in *State* v. *Arroyo,* 284 Conn. 597, 935 A.2d 975 (2007), *State* v. *George J.,* 280 Conn. 551, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007), and *State* v. *Pierre,* supra, 277 Conn. 42. We agree with the state.

We begin by noting that the defendant preserved his *Crawford* claim at trial and that we exercise plenary review over whether the trial court properly concluded that the admission of the videotapes did not violate the defendant's confrontation clause rights under *Crawford.* See, e.g., *State* v. *George J.,* supra, 280 Conn. 592; *State* v. *Kirby,* supra, 280 Conn. 378.

"Under *Crawford* v. *Washington,* supra, 541 U.S. 68, the hearsay statements of an unavailable witness that

---

[17] We note that the defendant also claims that the trial court's ruling also violated his confrontation rights under the state constitution. See Conn. Const., art. I, § 8. Because the defendant has not set forth a separate state constitutional analysis pursuant to *State* v. *Geisler,* 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), we deem that claim abandoned and "analyze the defendant's right to confrontation arguments under the requirements of the United States constitution." *State* v. *Pierre,* supra, 277 Conn. 74 n.12.

are testimonial in nature may be admitted under the sixth amendment's confrontation clause only if the defendant has had a prior opportunity to cross-examine the declarant. Hearsay statements that are nontestimonial in nature are not governed by the confrontation clause, and their admissibility is governed solely by the rules of evidence." *State* v. *Slater*, 285 Conn. 162, 169–70, 939 A.2d 1105 (2008).

Even if we were to assume without deciding that E's statements in the videotaped interview were, on the facts of the present case, "testimonial" in nature,[18] we nevertheless conclude that the admission of the videotaped interview did not violate the defendant's rights under *Crawford* v. *Washington*, supra, 541 U.S. 36. Our decision in *State* v. *Pierre*, supra, 277 Conn. 42, is instructive. In that case, the witness, a friend of the defendant, had supplied a written statement to the police implicating the defendant in the murder of the victim. Id., 54–55. At trial, the witness testified, however, that he had never heard of any of these events, and said that any assertion to the contrary in his statement was false. Id., 55. After concluding that the statement was admissible pursuant to the *Whelan* rule, we concluded that its use was not barred by *Crawford*, despite the fact that it was testimonial in nature. Id., 78. We noted that *Crawford* "makes clear . . . that, when the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements. . . . It is therefore irrelevant that the reliability of some out-of-court statements cannot be replicated, even if the declarant testifies to the same matters in court. . . .

---

[18] But see *State* v. *Arroyo*, supra, 284 Conn. 631–33 (concluding that statements made by child victim of sexual abuse during interview by clinical social worker at hospital were not testimonial, despite fact that law enforcement personnel were permitted to observe interview and retain audiotapes of it because primary purpose of interviews was to provide medical assistance to victim).

The [c]lause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." (Internal quotation marks omitted.) Id.

Moreover, in *Pierre*, we rejected the defendant's contention that, "despite the fact that [the witness] took the stand and answered questions, he was 'functionally unavailable' for cross-examination as to the contents of his statement" because of his claimed memory loss and statement that he had signed the document only to keep the police from harassing him. Id., 79. We noted that the "defendant's argument equates a declarant's inability or unwillingness to remember prior statements made to the police with a general unavailability from cross-examination in its entirety." Id. We relied on our previous *Whelan* jurisprudence, and sister state decisions that had interpreted *Crawford*'s availability element; see id., 81–84; and concluded that "a witness' claimed inability to remember earlier statements or the events surrounding those statements does not implicate the requirements of the confrontation clause under *Crawford*, so long as the witness appears at trial, takes an oath to testify truthfully, and answers the questions put to him or her during cross-examination." Id., 86. We concluded that, despite the fact that the witness "claimed that he could not remember ever having heard a description of the victim's murder . . . he was available for cross-examination at trial, thus removing any issue under the confrontation clause." Id., 85; see id., 84 (noting that declarant "took the stand at trial, agreed to testify truthfully, was subject to cross-examination by the defendant, and answered all questions posed by defense counsel" and "responded to several questions regarding his motives and interest in providing information to the police"); see also *State* v. *George J.*, supra, 280 Conn. 595–96 (rejecting defendant's claim that improper admission of hearsay statements in department record "implicated the confrontation concerns at

issue in *Crawford*" because declarant testified at trial and his failure to remember naming corroborating witnesses, which he had done in document at issue, did "not render him unavailable for *Crawford* purposes").

Accordingly, we follow our recent decisions in *Pierre* and *George J.*, and conclude that the defendant was not denied an opportunity to cross-examine E because she was not "functionally unavailable" under *Crawford*.[19] Indeed, we note that the defendant cross-examined E extensively about her memory and perception, eliciting facts including her belief in Santa Claus and his elves, her vision, and her understanding of the difference between truth and lies, and fantasy and reality, and also that she takes two medications for her "temper." With respect to the specific allegations, the defendant also cross-examined E extensively and elicited

---

[19] The defendant argues that *State* v. *Pierre*, supra, 277 Conn. 75–77, is distinguishable because that case involved a witness who subsequently changed his mind about testifying against his friend, whereas the present case involved a child witness who received statutorily mandated special accommodations; see General Statutes § 54-86g (b); and was unable to answer questions about the videotaped statement during cross-examination. We disagree. The principle articulated in *Pierre* has been held equally applicable to cases involving young victims of sexual assault who, at trial, did not recall making statements contained in videotaped interviews. See, e.g., *State* v. *Howell*, 226 S.W.3d 892, 896–97 (Mo. App. 2007) ("[t]he record clearly shows that [the] [d]efendant had the opportunity to effectively cross-examine [the seven year old] [v]ictim under oath and call to the attention of the jury [the] [v]ictim's forgetfulness"); *State* v. *Price*, 158 Wash. 2d 630, 649–50, 146 P.3d 1183 (2006) (noting that four year old victim "was physically present in the courtroom and she confronted [the defendant] face to face; she was competent to testify and testified under oath; the defense retained the full opportunity to cross-examine her and in fact called attention to her lack of memory in closing; and the judge, jury, and defendant were able to view [the victim's] demeanor and body language while she was on the stand"); see also *State* v. *Carothers*, 724 N.W.2d 610, 618 (S.D. 2006) ("Although [the four year old victim] may not have been able to repeat exactly what she told [the interviewer], police officers or doctors; she did remember speaking to them and responded that she remembered telling [the interviewer] 'the truth.' Therefore, she afforded the jury a satisfactory basis for evaluating the truth of her prior statements.").

testimony that she had never seen a man or boy without his clothing on, and that she did not remember participating in the videotaped interview or making the accusation that the defendant had touched her with his penis, that she got in trouble when she was younger for touching herself, and that she was not afraid of the defendant. Finally, the defendant was able to utilize this information in his closing arguments to the jury. Accordingly, we conclude that the defendant had an ample opportunity to cross-examine E effectively, and, therefore, his confrontation clause rights were not violated by the admission into evidence of the videotaped statement.

The judgment is affirmed.

In this opinion the other justices concurred.