# STATE OF CONNECTICUT *v.* BARRINGTON LINDO
## (AC 27909)

McLachlan, Harper and Foti, Js.

Argued June 2—officially released September 23, 2008

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (acquittee).

*Sarah Hanna*, deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Vicki Melchiorre*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The acquittee, Barrington Lindo, appeals following the court's granting of the state's petition for an order of continued commitment as to him. On appeal, the acquittee claims that General Statutes § 17a-593 (c),[1] as applied to him, violated his right to equal protection under the fourteenth amendment to the United States constitution.[2] We affirm the judgment of the trial court.

The following factual and procedural history is relevant to our disposition of the acquittee's claim. On December 20, 1990, the court, *Kline, J.*, found the acquittee not guilty by reason of mental disease or

[1] General Statutes § 17a-593 (c) provides: "If reasonable cause exists to believe that the acquittee remains a person with psychiatric disabilities or mentally retarded to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others, the state's attorney, at least one hundred thirty-five days prior to such expiration, may petition the court for an order of continued commitment of the acquittee."

[2] The acquittee also argues that § 17a-593 (c), as applied to him, violated his right to equal protection under article first, § 20, of the state constitution. Because the acquittee has not set forth a separate state constitutional analysis pursuant to *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), we deem that claim abandoned and analyze the acquittee's right to equal protection arguments under the requirements of the United States constitution. See *State* v. *Simpson*, 286 Conn. 634, 651 n.17, 945 A.2d 449 (2008).

defect to burglary in the first degree and attempt to commit assault in the first degree. On May 21, 1991, the court committed the acquittee to the jurisdiction of the psychiatric security review board (board) for a maximum period of ten years. On April 19, 2001, the court, *Ward, J.*, continued the acquittee's commitment until May 1, 2006, pursuant to the state's petition to continue his commitment. The acquittee initially was committed to the Whiting Forensic Division of Connecticut Valley Hospital, a maximum security facility, but on the basis of improvements in his condition, he was moved to the Dutcher Enhanced Security Service of Connecticut Valley Hospital (Dutcher), a less secure facility. While at Dutcher, the acquittee stabbed a staff member. He was arrested and pleaded guilty to assault in the second degree. As a result, the acquittee was sentenced to two years of imprisonment and then transferred to Garner Correctional Institution (Garner) to serve his two year sentence.

On November 8, 2005, the state filed a second petition for an order of continued commitment of the acquittee pursuant to § 17a-593 (c). On January 20, 2006, the board held a hearing on the state's petition and subsequently filed its report with the court. In its report, the board concluded that "based on clear and convincing evidence: [the acquittee] remains an individual with psychiatric disabilities to the extent that his discharge from the jurisdiction of the [b]oard would constitute a danger to himself or others." On April 20, 2006, the hearing on the state's petition for an order of continued commitment of the acquittee was scheduled to take place, but the acquittee moved for new counsel. As a result, the court extended the acquittee's commitment to July 6, 2006, with the consent of all parties, to allow him time to obtain new counsel.

On June 28 and 29, 2006, the court, *Koletsky, J.*, held a hearing on and granted the state's petition for continued commitment. The court continued the acquittee's commitment for a period not to exceed five years. Subsequently, on May 18, 2007, the court issued a memorandum of decision in which it stated that "[t]his court finds by clear and convincing evidence that the [acquittee's] release would lead to a substantial risk of imminent physical injury to others." This appeal followed. Additional facts will be set forth as necessary.

On appeal, the acquittee claims that § 17a-593 (c), as applied to him, violated his right to equal protection. Because the acquittee did not raise this claim before the trial court, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "*Golding* is a narrow exception to the general rule that an appellate court will not entertain a claim that has not been raised in the trial court. The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *State* v. *DeVivo*, 106 Conn. App. 641, 647, 942 A.2d 1066 (2008).

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis

in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. In the present case, the record is adequate to review the claim, and the claim is of constitutional magnitude, alleging the violation of the right to equal protection. Nevertheless, we conclude that the alleged constitutional violation does not clearly exist.

Prior to beginning our analysis, we set forth the applicable standard of review. The question of whether the application of § 17a-593 (c) to the acquittee violated his equal protection rights is a question of law over which we have plenary review. See *State* v. *Long*, 268 Conn. 508, 530, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004).

The acquittee argues that § 17a-593 (c), as applied to him, violated his right to equal protection because at the time of the recommitment hearing, in June, 2006, he was an inmate and therefore should have been afforded the more stringent procedural protections applicable when the state seeks to commit mentally ill prisoners pursuant to General Statutes § 17a-515.[3] The acquittee argues that when he was recommitted, he was a mentally ill prisoner, or at least was similarly situated to a mentally ill prisoner, because he was serving his two year sentence at Garner. In citing *State* v. *Metz*, 230 Conn. 400, 645 A.2d 965 (1994), the acquittee claims that our Supreme Court strongly has suggested that

---

[3] Pursuant to § 17a-515, when the state seeks to transfer an inmate to a psychiatric hospital for treatment, the procedural protections set forth in General Statutes § 17a-498 apply. Additionally, the acquittee listed three specific procedural protections afforded mentally ill prisoners: (1) that the court have before it sworn certificates, and if required, testimony of two impartial physicians, one of whom must be a psychiatrist, in determining the propriety of commitment, pursuant to § 17a-498, (2) the right to have a three judge panel determine the propriety of his commitment to a psychiatric hospital pursuant to General Statutes § 17a-497 (b) and (3) in contrast to a mentally ill prisoner commitment hearing, the court here was statutorily required to consider as its primary interest the protection of society.

mentally ill prisoners are similarly situated to acquittees subject to a petition for continued commitment or acquittees recommitted after their commitment has been extended. The acquittee claims that this disparate treatment denied him his right to equal protection because it does not pass rational basis review.[4]

In essence, the acquittee makes two arguments in support of his claim that the application to him of § 17a-593 (c) violated his right to equal protection: (1) he was a mentally ill prisoner and, therefore, was subject to disparate treatment as compared to other mentally ill prisoners when § 17a-593 (c) was applied to him instead of the civil commitment statutes applied to other mentally ill prisoners and (2) even if he was an acquittee and not a mentally ill prisoner, he was situated similarly to mentally ill prisoners and was treated in a manner different from them when § 17a-593 (c) was applied to him instead of the civil commitment statutes applicable to mentally ill prisoners.

I

With regard to the acquittee's first argument, the state contends that the acquittee was always an acquittee under the jurisdiction of the board, and, therefore, he was not a mentally ill prisoner and not entitled to statutory procedures applicable to them. We agree.

When an individual is found not guilty by reason of mental disease or defect pursuant to General Statutes § 53a-13, the Superior Court commits that individual, or the acquittee, to the custody of the commissioner of

---

[4] The acquittee also asserts that intermediate scrutiny should be applied to his equal protection claim, citing two decisions of the United States Court of Appeals for the Second Circuit, *Ernst J.* v. *Stone*, 452 F.3d 186 (2d Cir. 2006), and *Francis S.* v. *Stone*, 221 F.3d 100 (2d Cir. 2000), along with decisions of the New York Court of Appeals and the New York Appellate Division for this proposition. Nevertheless, he argues that the violation of his right to equal protection can pass neither rational basis nor intermediate review.

mental health and addiction services for an evaluation. General Statutes § 17a-582 (a). After the acquittee is examined, the court holds a hearing to determine whether the acquittee should be confined, conditionally released or discharged. General Statutes § 17a-582 (b) through (e). If the court determines that the acquittee should be confined, he is committed to the jurisdiction of the board for a "maximum term of commitment, not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense . . . ." General Statutes § 17a-582 (e) (1). At the end of the acquittee's commitment period, if it does not appear that the acquittee is fit to be discharged, the state is permitted to file a petition with the court for an order of continued commitment. General Statutes § 17a-593 (c). "During any term of commitment to the board, the acquittee shall remain under the jurisdiction of the board until discharged by the court pursuant to section 17a-593. . . ." General Statutes § 17a-582 (h).

In the present case, the acquittee was first committed to the jurisdiction of the board on May 21, 1991. On April 19, 2001, the court continued the acquittee's commitment under the jurisdiction of the board until May 1, 2006. Finally, on June 29, 2006, the court continued the acquittee's commitment for a period not to exceed five years. There is no evidence in the record that the acquittee was discharged from the jurisdiction of the board by the court pursuant to § 17a-593. Therefore, we conclude that the acquittee was an acquittee under the jurisdiction of the board at the time of the recommitment hearing in June, 2006, and, therefore, was not a mentally ill prisoner entitled to enhanced procedural protections. As such, the acquittee's right to equal protection was not violated by the failure to afford him the enhanced procedural protections to which mentally ill prisoners are entitled.

## II

With regard to the acquittee's second claim, the state argues that our Supreme Court held in *State* v. *Long*, supra, 268 Conn. 508, that even if acquittees facing recommitment are similarly situated to mentally ill prisoners, the application of § 17a-593 (c) to acquittees instead of civil commitment procedures does not violate equal protection principles because there are rational bases for the disparate treatment. We agree.

First we address whether the acquittee's claim should be analyzed under rational basis review. In his brief, the acquittee argues that intermediate scrutiny should be applied to his equal protection claim. We disagree. "Where . . . the classification at issue neither impinges upon a fundamental right nor affects a suspect group it will withstand constitutional attack if the distinction is founded on a rational basis. . . . Rational basis review is satisfied so long as there is a plausible policy reason for the classification . . . . [I]t is irrelevant whether the conceivable basis for the challenged distinction actually motivated the legislature." (Internal quotation marks omitted.) Id., 535. Because § 17a-593 (c) neither affects a suspect group nor implicates a fundamental right for the purposes of the federal equal protection clause, it must be analyzed under rational basis review. Id.

Next, we address the substance of the acquittee's claim that even if he was an acquittee and not a mentally ill prisoner, he was situated similarly to mentally ill prisoners and was treated in a manner different from them when § 17a-593 (c) was applied to him instead of the civil commitment statutes applicable to mentally ill prisoners. Our Supreme Court's decision in *Long* controls this claim. In *Long*, the state was appealing from the trial court's determination that "§ 17a-593 (c) violated the [acquittee]'s equal protection rights under

the fourteenth amendment to the United States constitution because it treats acquittees . . . differently from convicted prisoners who subsequently are civilly committed to a mental hospital at some point after they have been incarcerated ([civilly committed inmates])." Id., 514. Our Supreme Court reversed the judgment of the trial court, concluding that "a rational basis exists for the legislature's differential treatment of acquittees and civilly committed inmates, and, therefore, § 17a-593 (c) does not violate the [acquittee]'s federal equal protection guarantees." Id., 537.

First, our Supreme Court assumed, without deciding, that acquittees are situated similarly to civilly committed inmates. Id., 535. Nevertheless, our Supreme Court then cited two rational reasons for the disparate treatment in statutory recommitment procedures for acquittees as compared to civilly committed inmates. "First, under the acquittee statutory scheme, the board has general and specific familiarity with all acquittees beginning with their initial commitment . . . .

"Second, the state clearly has an interest in ensuring that its citizens are not erroneously committed based on harmless, idiosyncratic behavior. . . . The legislature, however, reasonably could have concluded that the risk of erroneous commitment is far less for an acquittee and, therefore, additional mandatory judicial review during the recommitment is unnecessary. Specifically, the legislature could have determined that the likelihood of an erroneous commitment is reduced in the case of an acquittee because an acquittee initiates the commitment process himself by pleading and proving the mental illness that led to his commission of a crime." (Citation omitted.) Id., 536–37.

In the present case, we assume, without deciding, that acquittees are situated similarly to mentally ill prisoners. We conclude, however, on the basis of *Long*,

that there are rational bases that justify the disparate treatment afforded acquittees as compared with that afforded mentally ill prisoners. The acquittee argues that *Long* is distinguishable from the present case due to the nature of the claim here[5] and his dual status as an acquittee and a prisoner. We are not persuaded. First, our Supreme Court concluded that rational bases existed for the disparate treatment of acquittees, as compared to mentally ill prisoners, which were not specific to the acquittee's claim in *Long*. For instance, the fact that the board gains general and specific familiarity with the acquittees negates the need for sworn certificates and, if required, the testimony of two impartial physicians, one of whom must be a psychiatrist, and a three judge panel to determine the propriety of commitment, all of which the acquittee argued should have been present prior to his being recommitted. See General Statutes § 17a-498 (c). Because the board gains such a substantial degree of familiarity with the acquittee, it is in a good position to submit, regarding the mental status of the acquittee, a thorough report on which the court relies heavily in deciding whether to recommit the acquittee. Additionally, the fact that the risk of erroneous commitment on the basis of idiosyncratic behavior is far less for an insanity acquittee negates the need for the court to consider solely the liberty interest of the acquittee. Indeed, the consideration of the liberty interest of a mentally ill prisoner is rational, as a mentally ill prisoner, unlike an acquittee, did not initiate the commitment process by pleading not guilty to a crime by reason of mental disease or defect.

Second, the acquittee's "dual status" as both an acquittee and a prisoner is irrelevant where we have

---

[5] In *Long*, the acquittee argued that the application of § 17a-593 (c) to him violated his due process rights and his right to equal protection because, among other things, the statute failed to provide an acquittee with mandatory periodic judicial review of confinement, which was afforded to mentally ill prisoners facing commitment.

assumed, without deciding, that acquittees are situated similarly to mentally ill prisoners. Because we conclude that there are rational bases for the disparate treatment afforded acquittees as compared to the treatment afforded mentally ill prisoners, the acquittee cannot prevail on his claim that even if he was an acquittee and not a mentally ill prisoner, his equal protection rights were violated because he was situated similarly to mentally ill prisoners and was treated in a manner different from them when § 17a-593 was applied to him instead of the civil commitment statutes applicable to mentally ill prisoners.

The judgment is affirmed.

In this opinion the other judges concurred.